**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RAYMOND ROSS** | **CIVIL ACTION**<br>**NO. 15-00197** |
| **Appellant** | |
| **v.** | **BANKRUPTCY**<br>**NO. 14-16866** |
| **AMERICHOICE FEDERAL CREDIT**<br>**UNION, et al.** | |
| **Appellees** | |

**PAPPERT, J.**                                                    **MAY 7, 2015**

<u>**MEMORANDUM**</u>

Debtor/Appellant Raymond Ross ("Ross") sought to voluntarily dismiss his Chapter 13 bankruptcy case after Appellee AmeriChoice Federal Credit Union ("AmeriChoice") moved to dismiss Ross' case or convert it to a Chapter 7 bankruptcy. The day after Ross filed his motion, the Bankruptcy Court granted AmeriChoice's motion, dismissed Ross' case with prejudice, and enjoined Ross from filing a subsequent bankruptcy petition without the permission of the Bankruptcy Court. The Bankruptcy Court did not issue a written opinion, but specified that its reasons for granting AmeriChoice's motion were stated in open court. Ross appeals to this Court under 28 U.S.C. § 158(a), which gives district courts jurisdiction to hear appeals of final judgments, orders, and decrees of the bankruptcy courts.[1]

Ross contends that the Bankruptcy Court erred in several respects. He first argues that the Bankruptcy Court erred in considering and granting AmeriChoice's motion given the pendency of Ross' own motion to voluntarily dismiss. He further argues that the Bankruptcy

---

[1] There is no dispute that the Bankruptcy Court's order dismissing Ross' Chapter 13 case with prejudice is a final order for purposes of 28 U.S.C. § 158(a). *See In re Andersen*, 476 B.R. 668, 671 (B.A.P. 1st Cir. 2012) ("An order granting a motion to dismiss is a final order that ends the litigation on the merits of the complaint.") (quoting *In re Conley*, 369 B.R. 67, 70 (B.A.P. 1st Cir. 2007)); *see also In re Flanagan*, 999 F.2d 753, 756 (3d Cir. 1993).

Court erred in dismissing his case with prejudice and enjoining him from future filings.  Finally,

he argues that the Bankruptcy Court erred in not issuing a written opinion, findings of fact, or

conclusions of law and stating in the order that a hearing was held on AmeriChoice's motion

even though no such hearing took place.

The Court affirms the Bankruptcy Court's order.  Although the Bankruptcy Court erred in

considering and granting AmeriChoice's motion in the face of Ross' motion to voluntarily

dismiss, that error is harmless.  Ross' remaining arguments are without merit.  The Bankruptcy

Court was well within its discretion to dismiss Ross' case with prejudice and enjoin him from

future filings.  Likewise, the Bankruptcy Court did not err in basing its decision on reasons stated

in open court rather than issuing a written opinion.  Finally, any error that may have occurred

with regard to whether a hearing took place on AmeriChoice's motion is harmless.

**FACTUAL AND PROCEDURAL BACKGROUND**

During the relevant time period, Ross owned and resided at a property located in Maple

Glen, Pennsylvania (the "Property").  (*See* Appellant's Br. at 7, Doc. No. 4.)  AmeriChoice held

a mortgage on the Property.  (*See id.* at 9.)  On May 23, 2012, AmeriChoice filed a mortgage

foreclosure complaint against Ross and his wife Sandra Dixon-Ross in state court.[2]  (*Id.*)

AmeriChoice alleged that Ross and his wife were in default and owed a principal amount of

$111,587.  (*Id.*)  The state court entered a default judgment in favor of AmeriChoice on June 4,

2013, and AmeriChoice eventually scheduled a sheriff's sale of the Property for October 30,

2013.  (*Id.*; Appellee's Br. at 7, Doc. No. 6.)

Ross filed a Chapter 13 bankruptcy petition the day before the scheduled sheriff's sale,

thereby delaying that sale under the automatic stay provision of the Bankruptcy Code.  (*See*

---

[2]    The relevant state court proceedings span nearly three years, are apparently still ongoing, and include a plethora of filings.  The Court highlights only those portions of the state court proceedings that are relevant to this appeal.

2

Appellant's Br. at 10.)  Attorney Anthony Frigo initially represented Ross.  (*Id.*)  Several months after the petition was filed, however, Ross replaced Frigo with attorney James Kutkowski.  (*Id.* at 12.)  Shortly after Kutkowski entered his appearance, the trustee filed a motion to dismiss the case.  (*Id.* at 13.)  The Bankruptcy Court granted the trustee's motion on April 23, 2014.  (*Id.*)  Ross then filed a *pro se* motion for relief from the order dismissing the case.  (*Id.*)  After the Bankruptcy Court held a hearing on Ross' motion, Ross agreed to withdraw it based on a payment agreement he had come to with AmeriChoice.  (*Id.*)

Proceedings continued in state court.  AmeriChoice eventually rescheduled the sheriff's sale of the Property for August 27, 2014.  (Appellee's Br. at 7.)  Ross submitted a number of filings in state court to avoid the sale.  These filings were unsuccessful.  Ross then filed a second Chapter 13 petition on the day the sale was scheduled, again delaying it under the automatic stay provision.  (Chap. 13 Voluntary Pet., Bankr. Doc. No. 1.)  Ross, who filed the second petition *pro se*, failed to include a Chapter 13 plan and certain required statements and schedules with his petition.  The Bankruptcy Court ordered Ross to file the missing documents within 14 days or risk having his case dismissed without additional notice or hearing.  (Order dtd. Aug. 27, 2014, Bankr. Doc. No. 7.)  The day before these documents were due, Ross moved for an extension of time, stating among other things that he had been unable to recover necessary documents from his former attorneys.  (Mot. to Extend Time, Bankr. Doc. No. 10.)  He later filed two amended motions for extension of time, both of which the Bankruptcy Court granted, giving Ross nearly an additional six weeks to file the necessary documents.  (Am. Mots. to Extend Time, Bankr. Doc. Nos. 13, 22; Orders Granting Mots. to Extend Time, Bankr. Doc. Nos. 18, 24.)

In the interim, AmeriChoice filed a motion for relief from the automatic stay.  (Mot. for Relief from Stay, Bankr. Doc. No. 16.)  Ross opposed this motion.  (Resp. in Opp'n, Bankr. Doc.

No. 23.)  The Bankruptcy Court heard oral argument on the motion.  (Hr'g on Mot. for Relief

from Stay, Bankr. Doc. No. 28.)  At the hearing, AmeriChoice argued that Ross had filed his

petition in bad faith to frustrate the sheriff's sale.  (Hr'g. Tr. 8:21-9:7, Bankr. Doc. No. 31.)

After the hearing, the Bankruptcy Court modified the automatic stay so that AmeriChoice could

foreclose on its mortgage and proceed with the sheriff's sale.  (Order Granting Mot. for Relief

from Stay, Bankr. Doc. No. 29.)

     One month after the Bankruptcy Court modified the automatic stay, AmeriChoice moved

to have the case dismissed or converted to a Chapter 7 proceeding pursuant to 11 U.S.C.

§ 1307(c)[3].  (Mot. to Convert, Bankr. Doc. No. 41.)  Once again, AmeriChoice argued that Ross

had filed his petition in bad faith on the eve of a sheriff's sale and had engaged in post-filing bad

faith conduct intended to delay the ultimate resolution of the case.  (*Id.*)  Ross filed a response in

opposition to AmeriChoice's motion, simply denying AmeriChoice's allegations.  (Resp. in

Opp'n to Mot. to Convert, Bankr. Doc. No. 47.)  The Bankruptcy Court scheduled a hearing on

this motion for December 17, 2014.  Ross asked the Bankruptcy Court to postpose the hearing,

but the Bankruptcy Court denied his request.  (Mot. to Reschedule Hr'g., Bankr. Doc. No. 46;

Order Denying Mot. to Reschedule Hr'g., Bankr. Doc. No. 50.)

     The day before the hearing, Ross filed a motion to voluntarily dismiss the case pursuant

to 11 U.S.C. § 1307(b)[4].  (Mot. to Dismiss, Bankr. Doc. No. 55.)  The following day, however,

the Bankruptcy Court issued a final order granting AmeriChoice's motion, dismissing Ross' case

with prejudice, and enjoining Ross from filing another bankruptcy case without express

---

[3]     11 U.S.C. § 1307(c) reads in relevant part, "[O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ."

[4]     11 U.S.C. § 1307(b) reads, "On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter.  Any waiver of the right to dismiss under this subsection is unenforceable."

permission from the Bankruptcy Court.[5]  (Order Dismissing Case with Prejudice, Bankr. Doc.

No. 53.)  Ross then filed a timely notice of appeal of this final order.  (Notice of Appeal, Bankr.

Doc. No. 58.)

Ross raises the following issues on appeal:

1.  Whether the Bankruptcy Court erred in ignoring and disregarding Ross' motion to
    dismiss the case pursuant to 11 U.S.C. § 1307(b) that Ross filed on December 16,
    2014.

2.  Whether the Bankruptcy Court erred by continuing proceedings in the case after Ross
    filed his motion to voluntarily dismiss the case.

3.  Whether the Bankruptcy Court erred in imposing an injunction against Ross having
    no time limitations or geographic limitations and preventing Ross from filing any
    future bankruptcy case anywhere without the express prior permission of the
    Bankruptcy Court.

4.  Whether the Bankruptcy Court erred in dismissing the case with prejudice.

5.  Whether the Bankruptcy Court erred in specifying the dismissal was "for the reasons
    stated in open Court" rather than issuing a written opinion, findings of fact, or
    conclusions of law.

6.  Whether the Bankruptcy Court erred in stating in the order that a hearing was held on
    December 17, 2014 when the Bankruptcy Court's docket shows that a hearing was
    not held on that date.

(*See* Stmt. of Issues on Appeal, Bankr. Doc. No. 59.)  The Court analyzes issues 1 and 2 together

as an attack on the Bankruptcy Court's procedures, and analyzes issues 3 and 4 together as an

attack on the substance of the order.

**STANDARD OF REVIEW**

This is an appeal from a final order of a bankruptcy court pursuant to 28 U.S.C. § 158(a).

This Court reviews "the bankruptcy court's legal determinations *de novo*, its factual findings for

---

[5]    Ross' § 1307(b) motion was not entered on the Bankruptcy Court docket until the day after the Bankruptcy
Court granted AmeriChoice's motion, and there is no evidence that the Bankruptcy Court was aware of Ross' motion
when it granted AmeriChoice's motion.  Nevertheless, Ross' motion was entered on the docket with a "filed on" date
of December 16, 2014.  The Bankruptcy Court's order granting AmeriChoice's motion is dated December 17, 2014.

clear error and its exercise of discretion for abuse thereof." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998).

**DISCUSSION**

<u>The Bankruptcy Court erred in granting AmeriChoice's Section 1307(c) motion after Ross filed his Section 1307(b) motion, but that error was harmless.</u>

Ross first contends that the Bankruptcy Court erred in "ignoring and disregarding [Ross'] motion to dismiss the case . . . pursuant to 11 U.S. Code § 1307(b) . . . and by continuing proceedings in the case" after Ross filed this motion.  (Appellant's Br. at 5.)  He argues that his right to dismiss under § 1307(b) is absolute and that by disregarding his motion, the Bankruptcy Court ignored "the voluntary nature of a Chapter 13 proceeding and the statutory intent of [§ 1307(b)]."  (*Id.* at 21-22.)  AmeriChoice contends that Ross had no absolute right to dismiss his case under § 1307(b).  (Appellee's Br. at 10.)  It argues that the Bankruptcy Court properly disregarded Ross' motion and instead dismissed the case pursuant to AmeriChoice's motion upon a finding of bad faith.  (*Id.*)  The Court reviews the Bankruptcy Court's decision to grant AmeriChoice's § 1307(c) motion in the face of Ross' § 1307(b) motion for abuse of discretion. *See In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007) ("We review the Bankruptcy Court's decision to dismiss the bankruptcy case as a bad faith filing for abuse of discretion.").

11 U.S.C. § 1307 pertains to conversion or dismissal of Chapter 13 bankruptcy cases. Subsection (b) reads: "On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable."  Subsection (c) reads, in relevant part: "[O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and

6

the estate, for cause . . . ."  "For cause" under this subsection includes bad faith.  *Myers*, 491 F.3d at 125 ("A bankruptcy filing made in bad faith may be dismissed 'for cause' under 11 U.S.C. § 1307(c) . . . .").

The issue of whether a debtor's right under § 1307(b) to voluntarily dismiss a petition is absolute or tempered by a bad faith exception is the subject of much disagreement and debate in the federal courts.  Neither the U.S. Supreme Court nor the Third Circuit Court of Appeals, however, has yet to weigh in on this debate.  The Court, therefore, surveys the law in this area to inform its decision.  *See Phila. World Hockey Club, Inc. v. Phila. Hockey Club, Inc.*, 351 F.Supp. 457, 461 (E.D. Pa. 1972) ("[In the absence of binding precedent,] decisions in other circuits or other district courts are . . . entitled to serious consideration, but they are not binding . . . ."); *see also Noto v. U.S.*, 598 F. Supp. 440, 442 n.6 (D.N.J. 1984) ("A district court is not bound by the appellate decisions outside its own circuit.").

Prior to 2007, the absolute right debate was defined by two decisions from separate Courts of Appeal.  On the one hand were courts that found an absolute right to voluntarily dismiss under § 1307(b).  The reasoning behind these decisions was espoused by the Second Circuit Court of Appeals in the case *In re Barbieri*, 199 F.3d 616 (1999).  There, the Second Circuit ruled that "a debtor has an absolute right to dismiss a Chapter 13 petition under § 1307(b), subject only to the limitation explicitly stated in that provision."  *Id.* at 619.  The decision focused on the language of § 1307(b), noting that it "unambiguously requires that if a debtor 'at any time' moves to dismiss a case that has not previously been converted, the court 'shall' dismiss the action."  *Id.*  It went on to note that "[t]he term 'shall,' as the Supreme Court has reminded us, generally is mandatory and leaves no room for the exercise of discretion by the trial court."  *Id.* (citing *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947)).  It also noted that this

interpretation was consistent with the purely voluntary nature of Chapter 13 proceedings.  *Id.* at 620.

Many other courts came to the same conclusion regarding a debtor's right to dismiss under § 1307(b).  *See, e.g.*, *In re Harper-Elder*, 184 B.R. 403, 405 (D.D.C. 1995) ("The court concludes that the debtor's right to a dismissal under § 1307(b) is absolute."); *In re Turiace*, 41 B.R. 466, 466 (D. Ore. 1984) (concluding that the language of § 1307(b) is mandatory and the court has no choice but to dismiss a Chapter 13 proceeding on the debtor's motion); *In re Merritt*, 39 B.R. 462, 465 (E.D. Pa. 1984) ("We agree with the weight of authority that the right of dismissal is absolute."); *In re Gullion*, 36 B.R. 901, 905 (E.D. Ark. 1983) ("From the plain and ordinary meaning of the language contained in § 1307(b), the Court is persuaded that a Chapter 13 debtor has an absolute right to dismiss his action prior to the conversion of such proceeding to a Chapter 7 liquidation proceeding."); *In re Hearn*, 18 B.R. 605, 607 (D. Neb. 1982) (ruling that debtor's right to dismissal is absolute); *In re Neiman*, 257 B.R. 105, 107 (Bankr. S.D. Fla. 2001) ("The Court holds that a chapter 13 debtor's § 1307(b) pre-conversion right to voluntary dismissal is absolute, notwithstanding a pending motion to convert for cause."); *In re Looney*, 90 B.R. 217, 217 (Bankr. W.D. Va. 1988) ("Forced to reconcile [§ 1307(b) and § 1307(c)], the court concludes that subsection (b) compels it to dismiss the case.").

On the other side of the debate were those courts that found a bad faith exception to a debtor's right to voluntarily dismiss.  The Eighth Circuit Court of Appeals' decision *In re Molitor*, 76 F.3d 218 (1996) is indicative of this position.  There, the Eighth Circuit ruled that a debtor could not escape an allegation of bad faith simply by voluntarily dismissing a Chapter 13 petition.  *Id.* at 220.  Rather than focus on the statutory language, the Eighth Circuit "look[ed] to the overall purpose and design of the statute as a whole . . . ."  *Id.*  It noted that "the purpose of

the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts." *Id.* It concluded that allowing a debtor "to respond to a motion to convert by voluntarily dismissing his case with impunity would render section 1307(c) a dead letter and open up the bankruptcy courts to a myriad of potential abuses." *Id.*

Other courts shared these concerns and agreed with the "honest but unfortunate debtor" rationale. *See, e.g.*, *In re Gaudet*, 132 B.R. 670, 676 (D.R.I. 1991) ("Reading subsections (b) and (c) *in pari materia* leads one to the conclusion that Congress could not have intended to give a debtor an absolute right to obtain dismissal of a Chapter 13 case."); *In re Fonke*, 310 B.R. 809, 814 (Bankr. S.D. Tex. 2004) ("[T]his Court agrees with those courts that have concluded that the right to dismissal is not absolute when there is a pending motion to convert or there are allegations of fraud or bad faith."); *In re Crowell*, 292 B.R. 541, 543 (Bankr. E.D. Tex. 2002) ("The Court concludes that the Debtor's 'absolute' right to dismiss a case under § 1307(b) is a myth and a misreading of the Code."); *In re Johnson*, 228 B.R. 663, 668 (Bankr. N.D. Ill. 1999) ("[A] debtor's right to voluntary dismissal of a Chapter 13 petition under § 1307(b) can be trumped under certain circumstances by a motion to convert under § 1307(c)."); *In re Casteel*, 207 B.R. 185, 187 (Bankr. E.D. Ark. 1997) ("[A] debtor does not have the absolute right to dismiss a voluntary Chapter 13 case where abuse of the Bankruptcy Code is shown."); *In re Powers*, 48 B.R. 120, 121 (Bankr. M.D. La. 1985) (ruling that right to voluntary dismissal "does not apply where the debtor has filed the case for an improper purpose, in bad faith, or to abuse or misuse the bankruptcy process").

The U.S. Supreme Court's 2007 decision in *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007) added a new wrinkle to this long-running debate. The issue before the Supreme

Court in *Marrama* was whether a debtor has an absolute right to convert a Chapter 7 proceeding to a Chapter 13 proceeding even if the debtor has engaged in bad faith.  Robert Marrama had filed a Chapter 7 petition.  In doing so, however, he made a number of misleading and inaccurate statements about his principal asset, a home in Maine.  When these inaccuracies came to light, Marrama moved to convert the Chapter 7 proceeding to a Chapter 13 proceeding.  The trustee and Marrama's creditors objected, contending that the motion was made in bad faith and would constitute an abuse of the bankruptcy process.  The bankruptcy judge denied Marrama's motion to convert.  Both the Bankruptcy Appellate Panel for the Fifth Circuit and the Fifth Circuit Court of Appeals affirmed the bankruptcy court's decision, and Marrama appealed to the Supreme Court.

The Supreme Court held that Marrama had forfeited his right to proceed under Chapter 13.  *Id.* at 371.  The Court began its analysis by looking at the following two subsections in 11 U.S.C. § 706:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
>
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

The Court then looked to § 1307(c).  That section provides that a Chapter 13 proceeding may be dismissed or converted to a Chapter 7 proceeding "for cause."  It also includes a nonexclusive list of acts and omissions that constitute "cause" to justify conversion or dismissal.  The Court acknowledged that prepetition bad faith was not on that list, but recognized that "[b]ankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words 'for cause.'"  *Marrama*, 549 U.S. at 373.  The Court then equated "a

10

ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad faith" with a "ruling that the individual does not qualify as a debtor under Chapter 13." *Id.* at 373-74.

Consequently, it concluded, Marrama's bad faith made him ineligible for relief under Chapter 13 so that denial of his motion to convert was authorized pursuant to § 706(d). *Id.* at 374. The Court then cited the bankruptcy courts' equitable powers under 11 U.S.C. § 105(a)[6] as "adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors." *Id.* at 375. In other words, the Court cited § 105(a) as a means by which the bankruptcy courts could avoid the "procedural anomaly" of converting a Chapter 7 case to a Chapter 13 case even though it "will thereafter be dismissed or immediately returned to Chapter 7." *Id.* at 368.

Even though *Marrama* did not involve § 1307(b) in any way, some courts used the decision to read a bad faith exception into that subsection. For example, the Ninth Circuit Court of Appeals in *In re Rosson*, 545 F.3d 764, 772 (2008), declared "After *Marrama* . . . the 'absolute right' position [of § 1307(b) dismissal] is no longer viable." To come to this conclusion, the Ninth Circuit read *Marrama* as a broad pronouncement "that even otherwise unqualified rights in the debtor are subject to limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process." *Id.* at 773 n.12. The Ninth Circuit acknowledged that the statutory language of "§ 706 states that a *debtor* 'may' convert a case, whereas § 1307(b) states that the *court* 'shall' dismiss a case at the debtor's request." *Id.* It characterized this difference, however,

---

[6]      11 U.S.C. § 105(a) reads, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

as "not dispositive," and found the language of these two statutory sections "indistinguishable." *Id.* at 773; *Id.* at 773 n.12.  In the case under its review, it held that the bankruptcy court did not abuse its discretion in converting Rosson's bankruptcy case on its own motion and denying voluntary dismissal, finding such action "specifically approved by *Marrama* . . . ."  *Id.* at 775.

Similarly, the Fifth Circuit Court of Appeals cited *Marrama* to "hold that the right to dismiss under 11 U.S.C. § 1307(b) is subject to a limited exception for bad-faith conduct or abuse of the bankruptcy process . . . ."  *In re Jacobsen*, 609 F.3d 647, 649 (2010).  There, the Fifth Circuit was persuaded that in *Marrama*, "the Court spoke in clear terms that bankruptcy courts have broad authority to take any action that is necessary or appropriate to prevent an abuse of process under § 105(a) of the Code and that they would have such power even in the absence of § 105(a) due to the inherent power of every federal court to sanction abusive litigation practices."  *Id.* at 661 (quotations omitted).  Similar to the Ninth Circuit, it found there to be "no analytical distinction" in the statutory language of § 706(a) and § 1307(b).  *Id.* at 660.

These two decisions notwithstanding, *Marrama* certainly did not settle the absolute right debate.  It is true that a number of courts have found the *Rosson/Jacobsen* line of reasoning persuasive.  *See, e.g.*, *In re Mitrano*, 472 B.R. 706, 710 (E.D. Va. 2012) ("This Court agrees with those courts holding that the right to dismissal upon request under § 1307(b) is limited to good-faith debtors."); *In re Kotche*, 457 B.R. 434, 440 (Bankr. D. Md. 2011) ("This court has come to the conclusion that the *Rosson* and *Jacobsen* cases are persuasive."); *In re Armstrong*, 408 B.R. 559, 569 (E.D.N.Y. 2009) ("[T]he Court holds that, in light of *Marrama*, a debtor does not have an absolute right to voluntarily dismiss her case when bad faith is established."); *In re Letterese*, 397 B.R. 507, 512 (S.D. Fla. 2008) ("I agree with this analysis and hold that a chapter 13 debtor

does not have an absolute right to dismiss his or her chapter 13 case in the face of bad faith conduct.").

Other courts, however, have determined that *Marrama* has no effect on the analysis of the statutory language of § 1307(b).  *See, e.g.*, *In re Procel*, 467 B.R. 297, 308 (S.D.N.Y. 2012) ("[T]his Court is bound by the holding in *Barbieri* that the right of voluntary dismissal under § 1307(b) is absolute."); *In re Darden*, 474 B.R. 1, 7 (Bankr. D. Mass. 2012) ("[Section] 1307(b) gives a debtor an absolute right of dismissal."); *In re Williams*, 435 B.R. 552, 560 (Bankr. N.D. Ill. 2010) ("[T]he language of § 1307(b) accords debtors an unlimited right to dismissal of unconverted Chapter 13 cases, and . . . that right is not limited by judicial discretion or other provisions of the Bankruptcy Code . . . ."); *In re Campbell*, No. 07-457, 2007 WL 4553596, at *1 (Bankr. N.D. W. Va. Dec. 18, 2007) ("[T]he Debtor has an absolute right to dismiss his Chapter 13 case . . . .").

Indeed, courts within this Circuit have different takes on the issue.  *Compare Taylor v. Winnecour*, 460 B.R. 673, 675 (W.D. Pa. 2011) ("The Court agrees . . . that 11 U.S.C. § 1307(b) is not mandatory, but rather, permits a debtor's good faith, or lack thereof, and any abusive [sic] of the bankruptcy process to be considered when ruling upon a debtor's Motion to Dismiss.") *and In re Caola*, 422 B.R. 13, 20 (D.N.J. 2010) (holding that a debtor's right to dismiss is not absolute when there has been a showing of bad faith conduct), *with In re Strunk*, No. 07-20758, 2007 WL 5171625, at *1 n.2 (Bankr. E.D. Pa. Nov. 6, 2007 ) ("Unlike a chapter 13 debtor, however, a chapter 7 debtor does not have an absolute right to voluntarily dismiss his chapter 7 case."); *see also In re Grocott*, 507 B.R. 816, 822 n.18 (E.D. Pa. 2014) (noting in dicta that "other courts in this district have found the right to be absolute.").

The Court agrees with the line of cases recognizing an absolute right to dismiss under § 1307(b), *Marrama* notwithstanding.  As with any exercise in statutory interpretation, the Court begins with the text of the statute.  *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) ("It is the cardinal canon of statutory interpretation that a court must begin with the statutory language.").  Where the statutory language is unambiguous, the Court need not look further.  *Id.*  ("When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete.") (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).  A statutory provision is ambiguous only where it is reasonably susceptible to different interpretations when read in its ordinary and natural sense.  *See In re Harvard Indus., Inc.*, 568 F.3d 444, 451 (3d Cir. 2009).  However, a statutory provision is not necessarily ambiguous simply because courts are divided as to its interpretation.  *In re Freidman's Inc.*, 738 F.3d 547, 554 (3d Cir. 2013).

The language of § 1307(b) is unambiguous.  It grants the debtor an absolute right to dismiss a Chapter 13 case, so long as the case has not been converted under §§ 706, 1112, or 1208 of the Bankruptcy Code.  It states that if the debtor requests dismissal, the court "shall dismiss [the] case."  The term "shall" "creates an obligation impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998); *see also Shenango Inc. v. Apfel*, 307 F.3d 174, 193 (3d Cir. 2002) ("'[S]hall' is generally mandatory when used in a statute.").  Section 1307(b), read in its ordinary and natural sense, is clear: when a Chapter 13 debtor moves to dismiss a case, the court must grant the motion, subject only to the limitations explicitly stated in § 1307(b).

Although it is unnecessary for the Court to look beyond the unambiguous statutory text, the Court notes that recognizing a debtor's absolute right to dismiss under § 1307(b) is consistent

with the purely voluntary nature of Chapter 13 proceedings.  11 U.S.C. § 303(a) specifies that only Chapter 7 liquidation proceedings can be commenced involuntarily against a personal debtor.  Additionally, 11 U.S.C. § 1321 puts the debtor in control of any proposed Chapter 13 payment plan.  Indeed, Congress and courts have recognized that involuntary Chapter 13 proceedings could compel debtors to work for their creditors in violation of the Thirteenth Amendment's prohibition on involuntary servitude.  *See, e.g.*, *In re Paolino*, No. 85-00759, 1991 WL 284107, at *7 n.13 (Bankr. E.D. Pa. Jan. 11, 1991) ("Congress expressly avoided the potential conflict with the Thirteenth Amendment's prohibition against involuntary servitude by requiring that chapter 13 be strictly voluntary.").

 *Marrama* does not demand a different result.  First, the Supreme Court in *Marrama* did not interpret the language of § 1307(b).  It interpreted § 706(a), which has more permissive language than does § 1307(b).  *Compare* 11 U.S.C. § 706(a) ("The debtor *may* convert a case . . . .") *with* 11 U.S.C. § 1307(b) ("[T]he court *shall* dismiss a case . . . .") (emphasis added).  Furthermore, the Court's analysis hinged on the limitation in § 706(d) that a debtor cannot convert a Chapter 7 proceeding to a chapter under which the debtor does not qualify for relief.  *Marrama*, 549 U.S. at 372.  Because Chapter 13 proceedings can be converted or dismissed for bad faith under § 1307(c), the Court concluded, a Chapter 7 debtor who has engaged in bad faith is not eligible to be a debtor under Chapter 13.  *Id.* at 374.  Moreover, the Court's decision hinged on the text of these provisions, not on any general equitable power of bankruptcy courts to police bad faith.  The Court only mentioned the bankruptcy courts' equitable powers under § 105(a) as a means to avoid the "procedural anomaly" of allowing a Chapter 7 debtor to convert to a Chapter 13 proceeding only to have that proceeding dismissed or converted back to a Chapter 7 proceeding for cause.  *Id.* at 368; *see also Law v. Siegal*, 134 S. Ct. 1188, 1197 (2014)

("At most, *Marrama*'s dictum suggests that in some circumstances a bankruptcy court may be authorized to dispense with futile procedural niceties in order to reach more expeditiously an end result required by the Code."). This Court will not broaden the holding in *Marrama* beyond its terms.

Nor will the Court read § 105(a) in a way that would allow bankruptcy courts to disregard clear statutory language. While the equitable powers of bankruptcy courts under § 105(a) may be broad, they are not unlimited. *In re Olson*, 120 F.3d 98, 102 (8th Cir. 1997). They cannot be used to eviscerate clear statutory mandates. *See Law*, 134 S. Ct. at 1197 ("*Marrama* most certainly did not endorse, even in dictum, the view that equitable considerations permit a bankruptcy court to contravene express provisions of the Code."); *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004) ("[T]he power conferred by § 105(a) is one to implement rather than override."); *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987) ("[T]he creation of the Emergency Treatment Fund at this stage of the Chapter 11 bankruptcy proceedings violates the clear language and intent of the Bankruptcy Code, and such action may not be justified as an exercise of the court's equitable powers under 105(a)."). Section 105(a) does not allow bankruptcy courts to effectively amend the Bankruptcy Code by ignoring the Code's clear statutory language. *See Williams*, 435 B.R. at 560 ("Because a bad-faith exception would directly conflict with § 1307(b)'s requirement that courts 'shall' dismiss a Chapter 13 case upon the debtor's request, it falls beyond the scope of any authority conferred by § 105(a).").

AmeriChoice argues that giving a debtor an absolute right to dismiss would "condone [and] enable further bad faith conduct by a debtor who is faced with a Motion to Dismiss under 11 U.S.C. § 1307(c)." (Appellee's Br. at 10.) The courts that have read a bad faith exception into § 1307(b) share this concern. *See, e.g., Molitor*, 76 F.3d at 220 ("To allow Molitor to

16

respond to a motion to convert by voluntarily dismissing his case with impunity would render section 1307(c) a dead letter and open up the bankruptcy courts to a myriad of potential abuses."); *In re Fonke*, 310 B.R. 809, 813 (Bankr. S.D. Tx. 2004) ("The concern of these courts is that an absolute right to dismiss in face of allegations of fraud and bad faith will encourage abuse of the bankruptcy systems by dishonest individuals who are misusing the system.").

These concerns, while to a degree understandable, do not give the Court license to disregard the unambiguous language of § 1307(b).  Moreover, while a debtor's right to dismiss under § 1307(b) is absolute, it is not unconditional or self-executing.  *See In re Diley*, 125 B.R. 189, 195 (Bankr. N.D. Ohio 1991) ("Section 1307(b) provides only that the Court shall dismiss the case.  It does not state the implications of that dismissal . . . .").  A debtor must request dismissal under § 1307(b) by formal motion.  Fed. R. Bankr. P. 1017 ("Conversion or dismissal under . . . § 1307(b) shall be on motion filed and served as required by Rule 9013.").  The bankruptcy court can receive briefing and schedule a hearing on the request.  *See Merritt*, 39 B.R. at 464 ("Although § 1307(b) gives the debtor an absolute right to dismissal if the case has not previously been converted, the section does not govern the time or manner by which the order of dismissal must be entered.").  Creditors or the trustee can raise any concerns regarding a debtor's bad faith or abuse of the bankruptcy process at that time.

Then, while the bankruptcy court must ultimately grant the debtor's motion and dismiss the case, it can do so with prejudice, and it can place conditions on the dismissal if it finds them appropriate.  *See, e.g.*, *In re Mangual*, No. 10-00124, 2010 WL 5185392, at *3 (Bankr. D.P.R. Dec. 20, 2010) (granting § 1307(b) motion but barring debtors from filing another bankruptcy petition for one year).  This concept was articulated even when the absolute right debate was still in relevant infancy:

> [E]ven those courts that hold the right to dismiss to be absolute recognize their authority to attach strings to the dismissal. Section 1307(b) is not self-executing; the debtor must make a formal motion, serve it in accordance with Fed. R. Bankr. P. 1017(d), and the court must enter a dismissal order. The dismissal order may impose sanctions and conditions if the circumstances indicate fraud, bad faith or abusive tactics.

*In re Greenberg*, 200 B.R. 763, 767 (Bankr. S.D.N.Y. 1996) (citation omitted). Moreover, as more recently recognized by the Bankruptcy Court for the Northern District of West Virginia:

> [S]ufficient safeguards against abuse are already present without the need to evade the plain language of § 1307(b). Possible remedies include Rule 11 sanctions, allowing parties to pursue state law remedies, filing an involuntary petition under § 303, referring conduct to the United States Attorney's Office for possible criminal prosecution, and most importantly, conditioning the dismissal pursuant to 11 U.S.C. § 349 . . . .

*In re Campbell*, No. 07-457, 2007 WL 4553596, at *4 (Bankr. N.D. W. Va. Dec. 18, 2007); *see also In re Polly*, 392 B.R. 236, 246 (Bankr. N.D. Tex. 2008) ("Nor does dismissal necessarily relieve a debtor of the consequences of his or her misconduct."), *declined to follow by In re Jacobson*, 609 F.3d at 660.

Here, the Bankruptcy Court erred by dismissing Ross' Chapter 13 case pursuant to AmeriChoice's § 1307(c) motion rather than pursuant to Ross' § 1307(b) motion. As explained above, however, Ross' § 1307(b) motion was not self-executing. Therefore, the Bankruptcy Court did not err in "continuing proceedings in the case" after Ross filed that motion. Ultimately, the outcome – dismissal of the case – was the same even had the Bankruptcy Court properly granted Ross' motion instead of AmeriChoice's motion. Additionally, as explained above, the Bankruptcy Court had the authority to condition the dismissal as it did, no matter the motion on which it acted. The Bankruptcy Court already had before it AmeriChoice's briefing on its § 1307(c) motion, tantamount to an opposition to Ross' § 1307(b) motion. The Bankruptcy Court had also heard testimony on Ross' alleged bad faith at the hearing on

AmeriChoice's motion for relief from the automatic stay.  (*See* Bankr. Doc. Nos. 28, 31.)

Therefore, even had the Bankruptcy Court proceeded properly, the outcome would not have

changed.  The Bankruptcy Court's error was therefore harmless, and this Court will not vacate or

reverse the Bankruptcy Court's order based on this error.  *See, e.g.*, *New York City Shoes, Inc. v.*

*Best Shoe Corp.*, 106 B.R. 58, 62 (E.D. Pa. 1989) (affirming bankruptcy court order because

"[e]ven if the bankruptcy court erred . . . the error was harmless.").

<u>The Bankruptcy Court did not err in dismissing Ross' case with prejudice and enjoining Ross</u>
<u>from filing another bankruptcy case without permission from the Bankruptcy Court.</u>

Ross next attacks the substance of the Bankruptcy Court order in that it dismissed Ross'

case with prejudice and enjoined Ross from future bankruptcy filings.  As stated above, the

Bankruptcy Court had the discretion to place both of these conditions on the dismissal.  *See, e.g.*,

*In re LeGree*, 285 B.R. 615, 621 (Bankr. E.D. Pa. 2002) ("I conclude that, in light of the number

of previous filings, the Debtor should be precluded from refiling for a period of one year and,

thereafter, only with the Court's permission.").  As a result, this Court is limited to reviewing

whether the Bankruptcy Court abused its discretion in doing so.  *See, e.g.*, *Lucabaugh v. IRS*, No.

01-2254, 2001 WL 997416, at *5 (E.D. Pa. Jun. 26, 2001) (ruling that bankruptcy court did not

abuse its discretion in dismissing with prejudice and enjoining future filings).

The only ground for dismissal or conversion that AmeriChoice raised in its § 1307(c)

motion was Ross' alleged bad faith.  (Mot. to Convert ¶¶ 77-90.)  Ross makes no mention of

these allegations in his opening brief, even though they form the basis of the Bankruptcy Court's

dismissal.  Ross cannot demonstrate that the Bankruptcy Court abused its discretion simply by

making a conclusory allegation that it did so.  *See U.S. v. Voigt*, 89 F.3d 1050, 1064 n.4 (3d Cir.

1996) ("The failure to raise a theory as an issue on appeal constitutes waiver [and] briefs *must*

contain statements of all issues presented for appeal, together with supporting arguments . . . .")

(quotation and citation omitted); *In re W.R. Grace & Co.*, 475 B.R. 34, 139 n.103 (D. Del. 2012)

("It is a well-established maxim that, on appeal, courts need not address legal issues that have not

been fully developed through proper briefing."). Nevertheless, as Ross is appealing *pro se* the

Court will construe his filings liberally and conduct a plenary review of the record to determine

if AmeriChoice's allegations of bad faith are well grounded. *In re Pierson*, No. 08-1015, 2009

WL 1424472, at *3 (E.D. Pa. May 19, 2009) ("[I]n recognition of the need to treat *pro se*

litigants with care, this Court has gone beyond Mr. Pierson's briefing and reviewed in depth the

relevant hearing transcripts and Orders of the Bankruptcy Court."); *see also In re Gulph Woods*

*Corp.*, 189 B.R. 320, 323 (E.D. Pa. 1995) ("Pleadings filed *pro se* are construed liberally . . . .").

Bad faith exists "where the purpose of the bankruptcy filing is to defeat state court

litigation without a reorganization purpose." *Forever Green Athletic Fields, Inc. v. Dawson*, 514

B.R. 768, 788 (E.D. Pa. 2014) (quoting *In re Dami*, 172 B.R. 6, 10 (Bankr. E.D. Pa. 1994)).

Whether a bankruptcy petition has been filed in good faith or bad faith "is a fact intensive

determination better left to the discretion of the bankruptcy court." *In re Lilley*, 91 F.3d 491,

496. This Court will therefore not disturb any determination of bad faith unless it is premised on

factual findings that are clearly erroneous. *See Myers*, 491 F.3d at 125 ("[W]e will not set aside

the Bankruptcy Court's factual findings unless they are clearly erroneous.").

Here, Ross' alleged bad faith was central to AmeriChoice's motion for relief from the

automatic stay. The Bankruptcy Court held oral argument on that motion, a transcript of which

Ross designated as part of the record on appeal.[7] During that hearing, the Bankruptcy Court

premised a determination of bad faith on the fact that Ross had failed to make any payments to

---

[7] This is the only transcript that Ross designated as part of the record on appeal. As discussed below, there is
a dispute as to whether the Bankruptcy Court held a hearing on AmeriChoice's § 1307(c) motion. However, given
the Bankruptcy Court's statement that its reasons for granting the order at issue were stated in open court, the Court
considers the only hearing transcript designated by Ross to determine whether the Bankruptcy Court abused its
discretion in dismissing the case with prejudice and enjoining Ross from future filings.

AmeriChoice during the bankruptcy and had filed both bankruptcies to avoid scheduled sheriff's sales:

> [T]here's really no spilt of authority on the question of your obligation to make payments during the pendency of this case. And you haven't done that, and you filed the case, on both occasions, to frustrate a sheriff's sale on the very eve of the sale. That's highly indicative of bad faith, and very compelling.

(Hr'g Tr. 14:24-15:9) (interjections omitted)

> Mr. Ross, as I've pointed out, the specifics of the amount of the debt that – that may be remaining after your payment of $10,000, pursuant to the agreement you made in the last case, would not change the fact that they have a foreclosure judgment. They've had it for a long time. That you didn't make any payments in this case. That you filed both cases to frustrate the sale. And that you've taken these exact arguments in front of the Judge who has the case in Montgomery County and have been denied any and all relief. So it's difficult for me to reach any other conclusion than that this case is – is designed simply to frustrate next week's sale. And, frankly, with respect, I'm not going to permit that.

(Hr'g Tr. 15:17-16:6) (interjections omitted). These factual findings are not clearly erroneous. Indeed, that are not even in dispute.

As the Bankruptcy Court noted, Ross' tactics are "textbook examples of bad faith efforts to frustrate State Court litigation." (Hr'g Tr. 19:4-8); *see, e.g. In re Mondelli*, 558 F. App'x 260, 263 (3d Cir. 2014) (affirming bankruptcy court's finding of bad faith because "the suspicious timing of Mondelli's petition indicated that his sole purpose in filing for bankruptcy was to delay the sheriff's sale of the property."); *United States v. Hayford*, 354 F. App'x 720, 721 (3d Cir. 2009) (affirming charge of bankruptcy fraud where debtor's "goal of her repeated petition filings was to delay the scheduled sheriff's sales [and debtor] lived in her residence without making mortgage payments for the entire period of her filings."); *In re Knauss*, No. 13-01131, 2013 WL 5942391, at *3 (E.D. Pa. Nov. 5, 2013) ("And there are numerous additional indicators of bad faith in Appellant's filing: the timing of the petition one day after acquisition of the Property and

moments before a Sheriff's Sale [and] the debtor's motive in filing the petition, which was to evade a Sheriff's Sale . . . .") (quotation omitted); *In re Joobeen*, 385 B.R. 599, 611 (E.D. Pa. 2008) ("[T]he suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in the bad faith analysis."); *In re Dulisse*, No. 01-1385, 2001 WL 769994, at *2 (E.D. Pa. July 5, 2001) ("Here, the chronology of the bankruptcy filings in relation to the dates of the sheriff's sales is evidence that the petitions were not intended for reorganization, but to delay the foreclosure sales.").

Given Ross' history of filing for bankruptcy immediately before a scheduled sheriff's sale of the Property and his failure to make payments while the case was pending, the Bankruptcy Court was well within its discretion to dismiss the case with prejudice and enjoin Ross from filing future cases without permission from the Bankruptcy Court.

<u>The Bankruptcy Court did not err in issuing its order without an opinion, findings of fact, or conclusions of law.</u>

Ross next attacks the form of the Bankruptcy Court's order in that it did not include a written opinion, findings of fact, or conclusions of law. Ross does not cite any legal authority to show why these documents were required. He does not even brief the point after listing it in his statement of issues to be presented on appeal. Nevertheless, to the extent a bankruptcy court is required to issue an opinion, it is generally meant to ensure a meaningful appellate review. *See, e.g.*, *In re Kempner*, 152 B.R. 37, 41 (D. Del. 1993) (holding that bankruptcy judge's oral ruling was adequate where "the Bankruptcy Court's statements on the record sufficiently explain the rationale for denying [creditor's] motion to dismiss so as to provide meaningful appellate review of the Bankruptcy Court's order."). Here, as evident from the earlier discussion, the Bankruptcy Court's statements on the record are adequate to provide meaningful appellate review. The Court, therefore, will not vacate or reverse the Bankruptcy Court's order on this ground.

<u>Any error the Bankruptcy Court made in stating in its order that a hearing was held on December 17, 2014 when the Bankruptcy Court docket shows that a hearing was not held on that date was harmless.</u>

Finally, Ross argues that the Bankruptcy Court erred in stating in its order that a hearing was held on AmeriChoice's § 1307(c) motion on December 17, 2014 when the case docket states that a hearing was not held on that day.  (Appellant's Br. at 6.)  Once again, Ross includes this point in his statement of issues to be presented on appeal and in his summary of the argument, but does not substantively brief the issue.

The Bankruptcy Court had scheduled a hearing on AmeriChoice's § 1307(c) motion for December 17.  (*See* Bankr. Doc. No. 44.)  Ross requested that the hearing be delayed, but the Bankruptcy Court denied the request.  (Bankr. Doc. Nos. 46, 50.)  There is nothing in the record to show that the hearing was cancelled.  It is therefore not entirely clear if or why the scheduled hearing did not go forward.  AmeriChoice states that the hearing was held, but that Ross failed to appear.  (Appellee's Br. at 8.)  Ross notably does not dispute this statement.

In any event, the Court cannot see how what is likely nothing more than a clerical error could have prejudiced Ross in any way.  Both Ross and AmeriChoice submitted briefing on the issue of bad faith in connection with AmeriChoice's § 1307(c) motion.  The Bankruptcy Court heard oral argument on Ross' alleged bad faith in connection with AmeriChoice's motion for relief from the automatic stay.  The Bankruptcy Court had ample information before it to render its decision.  A minor discrepancy between the order and the docket with respect to whether a hearing was held on AmeriChoice's motion does not change the realities of the case.  Any error contained in the order with regard to the hearing is harmless.

**CONCLUSION**

The Court holds that the bankruptcy court abused its discretion by ruling on AmeriChoice's § 1307(c) motion to convert or dismiss after Ross had filed a motion for

voluntary dismissal under § 1307(b).  That error, however, was harmless.  The Bankruptcy Court did not err in proceeding in the case after Ross had filed his § 1307(b) motion, dismissing the case with prejudice, enjoining Ross from filing another bankruptcy case without permission of the Bankruptcy Court, or issuing its order without a written opinion, findings of fact, or conclusions of law.  Finally, any error contained in the order regarding whether a hearing was held on December 17, 2014 is harmless.  The Bankruptcy Court's order is affirmed.

      An appropriate order follows.

_/s/ Gerald J. Pappert_
GERALD J. PAPPERT, J.